1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    UNITED STATES,                          Case No.  14-cr-00638-JD-1
                    Plaintiff,
8
                                             **ORDER DENYING MOTION TO**
9         v.                                 **SUPPRESS**
10   KONRAD P. WOLFF,                         Re: Dkt. No. 25
                    Defendant.
11
12
13        Defendant Konrad Wolff is charged with one count of possessing child pornography and

14   one count of receiving child pornography.  He moves to suppress the results of searches of his

15   hard drives and electronic devices.  The Court denies the motion.

16                                  **BACKGROUND**

17        On September 24, 2015, Wolff's wife, a student at UC Berkeley, contacted Officer Kevin

18   Vincent of the University of California Police Department ("UCPD") to report that "she had

19   discovered child pornography on an external computer hard drive" that belonged to Wolff.  *See*

20   Sept. 25, 2014, Search Warrant and Affidavit ("First Search Warrant") ¶ 1, Dkt. No. 28-1.  Ms.

21   Wolff told Officer Vincent that she had used her husband's computer with his permission the

22   previous day while he was out of town, and in the course of performing a computer search came

23   upon files with names similar to "stepfather fucking stepdaughter" and "two men having sex with

24   a teenage girl."  *Id.* ¶ 2; Declaration of Kevin Vincent ("Vincent Decl.") ¶ 5, Dkt. No. 29.  Her

25   initial attempts to open the files were unsuccessful.  *See id.*  The next day, she tried to access the

26   files on her husband's "WD My Passport" external hard drive.  First Search Warrant ¶ 3; Vincent

27   Decl. ¶ 8.  She found that it was password protected, but noticing that the password hint was

28   "moar" -- Danish for "mother" -- she was able to deduce that the password was "jegelskermoar,"

United States District Court
Northern District of California

1    Danish for "ilovemother."  Vincent Decl. ¶ 8; Incident Report, Dkt. No. 29-2.[1]  On the drive, she

2    found what she described as "'hundreds' of images of minors engaged in sexual acts or exposing

3    themselves in a sexual manner."  First Search Warrant ¶ 4.  The folders containing the pictures

4    were "buried deep within other folder groups, and were categorized by name and ethnicity."  *See*

5    Incident Report.  Ms. Wolff estimated that "the female children in the images ranged in age from 8

6    to 14 years old, although most of them were age 8 to 10 years old."  First Search Warrant ¶ 4.  On

7    the evening of September 24, 2014, she turned the drive over to Officer Vincent.  *Id.* ¶ 5; Incident

8    Report; Vincent Decl. ¶ 10.

9         On September 25, 2014, Sergeant Andrew Tucker of UCPD prepared a search warrant

10   affidavit recounting these facts and seeking judicial permission to search the drive.  *See* First

11   Search Warrant.  Judge Tara Desautels of the Alameda Superior Court issued the warrant that

12   afternoon.  *See id.*  After the warrant was issued, UCPD sent the hard drive to a crime lab for

13   testing.  *See* Declaration of Andrew Tucker ("Tucker Decl.") ¶ 8, Dkt. No. 28; Sept. 30, 2014,

14   Search Warrant and Affidavit ("Second Search Warrant") ¶ 6, Dkt. No. 28-2.  That same day,

15   Officer Vincent went back to Ms. Wolff's apartment, where she gave him two laptops, a tablet, a

16   digital camcorder, two cell phones, and six thumb drives.  Vincent Decl. ¶ 14.

17        On September 30, 2014, Sergeant Tucker prepared a second search warrant affidavit,

18   seeking judicial permission to search the newly acquired electronic devices.  *See* Second Search

19   Warrant.  The affidavit contained allegations almost identical to the ones submitted on September

20   25 and a new paragraph describing the general characteristics of pedophiles "[b]ased on [his]

21   training and experience."  *See id.* ¶ 8.  Judge Desautels signed the warrant the same day, *see*

22   Second Search Warrant, and Sergeant Tucker submitted the additional electronics to the crime lab.

23        The crime lab analysis revealed 93,158 images of suspected child pornography on Wolff's

24   hard drive, among other findings.  Dkt. Nos. 28-5, 28-6.  The government filed an indictment on

25   December 18, 2014, charging Mr. Wolff with one count of possession of child pornography in

26   violation of 18 U.S.C. § 2252(a)(4)(B).  *See* Dkt. No. 1.  On February 19, 2015, the government

27

28   _____
     [1] Mr. Wolff is of Danish descent, and had taught his wife some Danish phrases.  *See* Incident
     Report.

United States District Court
Northern District of California

filed a superseding indictment, alleging counts for possession, 18 U.S.C. § 2252(a)(4)(B), and receipt, 18 U.S.C. § 2252(a)(2), of child pornography.  *See* Dkt. No. 14.

### DISCUSSION

Wolff challenges both the government's initial acquisition of his electronic devices and the lawfulness of the two state warrants that the government obtained to search them.[2]  Neither argument is persuasive.

#### A.        Acquisition of Electronic Devices

Wolff contends that the government could not accept his electronic devices from Ms. Wolff without a warrant.  Although he concedes that his wife turned the devices over voluntarily and without coercion, *see* Hearing Tr. at 16:4-5, Dkt. No. 37, he nevertheless contends that the government's actions constituted a warrantless seizure that does not fall within a recognized Fourth Amendment exception.

As an initial matter, Wolff's argument that the government's acceptance of the devices constitutes a Fourth Amendment seizure of any kind -- let alone an unlawful one -- is ill taken. The Ninth Circuit has held that "evidence discovered in a private search is not subject to exclusion for failure to obtain a search warrant or otherwise comply with the requirements of the [F]ourth [A]mendment" because "the [F]ourth [A]mendment protects against unreasonable intrusions by the government, but not against the conduct of private individuals."  *United States v. Sherwin*, 539 F.2d 1, 5-6 (9th Cir. 1976); *see also United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) ("The Fourth Amendment's proscriptions on searches and seizures are inapplicable to private action.").  Wolff contends that *Sherwin* is outdated and was implicitly overruled in *United States v. Jacobsen*, which held that receipt by Drug Enforcement Agency officers of a suspicious package found by Federal Express employees was a seizure.  *Jacobsen*, 466 U.S. 109, 120 & n.18 (1984) ("the agents' assertion of dominion and control over the package and its contents did constitute a 'seizure' . . . .").  The problem with this argument is that a year after *Jacobsen*, the

---

[2] He also suggests in passing that the language of the search warrant may be insufficiently particular depending on how it is interpreted, *see* Dkt. No. 25 at 8 n.7, but the Court cannot decide an argument that is simply gestured at, not made.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Ninth Circuit cited *Sherwin* to reiterate that "[t]he government's acceptance of documents

2    obtained in a private search and voluntarily relinquished to government agents does not constitute

3    a seizure . . . ." *United States v. Black*, 767 F.2d 1334, 1340 n.4 (9th Cir. 1985).  While the Court

4    may not be bound by circuit precedent when there is an intervening and clearly irreconcilable

5    Supreme Court opinion, *see Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), Wolff

6    has not shown that *Jacobsen* amounts to a sea change in precedent, and he also fails to point to

7    any authority for the notion that this Court can refuse to follow a precedential Ninth Circuit

8    opinion based on a Supreme Court decision that predates it.

9        Wolff's argument also fails on specific substantive grounds.  *Jacobsen* affirmed the

10   proposition that the Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an

11   unreasonable one, effected by a private individual not acting as an agent of the Government or

12   with the participation or knowledge of any governmental official.'"  *Jacobsen*, 466 U.S. at 113

13   (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980)).  Contrary to Wolff's suggestion,

14   *Jacobsen* clearly permitted the UCPD's warrantless acceptance of the electronic devices from Ms.

15   Wolff.  The case holds that the lawfulness of a government search subsequent to a private search

16   "must be tested by the degree to which [the government] exceeded the scope of the private

17   search."  *See Jacobsen*, 466 U.S. at 115.  As Mr. Wolff concedes, the government did not search

18   within the external hard drive or electronics prior to obtaining a warrant.  *See* Hearing Tr. at

19   22:18-21.  There was no government search at all that might exceed the scope of Ms. Wolff's

20   private search.  Nor was the warrantless seizure of the devices, even assuming it was a seizure,

21   unreasonable.  As *Jacobsen* found, the government agents may have "seized" the narcotics

22   package, but since it "remained unsealed, and the Federal Express employees had invited the

23   agents to examine its contents," the "seizure was not unreasonable."  *Jacobsen*, 466 U.S. at 120-

24   21.

25       Wolff cites no case to the contrary.  In *United States v. Tosti*, the Ninth Circuit upheld two

26   police searches, neither of which is analogous to the government's alleged seizure here.  The first

27   took place in 2005, when Tosti gave his computer to a CompUSA store for servicing, and an

28   employee found child pornography on it.  *See Tosti*, 733 F.3d at 818-19.  Police detectives arrived

4

on the scene and viewed both thumbnails and full-sized versions of the same images the employee had seen. *See id.* Based on what they saw, the detectives seized Tosti's computer. *See id.* The court of appeals upheld the search under the private search exception, without addressing the detectives' seizure of the computer. *See id.* at 821-22. The second search took place in 2009, after Tosti's wife turned over various electronic devices from their shared residence to the police and signed a "Consent to Search" form purporting to allow the government to search the items she had turned over. *See id.* at 819-20. The Ninth Circuit opinion examined only the search of the devices, not their seizure. *See id.* at 823-24. Nothing in the opinion addresses, much less finds unlawful, a challenged seizure.

The other cases Wolff cites are equally inapposite. In *United States v. Trejo*, police officers physically went to the defendant's home, seized his computers based on permission from his parents, who lived in the same house, and searched the devices without a warrant. *See* 471 F. App'x 442, 445 (6th Cir. 2012) (unpublished). *Trejo* addressed the constitutionality of both the search and seizure together, and does not touch on the issue at hand: the constitutionality of a warrantless seizure accompanied by a search conducted pursuant to a warrant. *See id.* at 447-49. The same is true of the three-paragraph memorandum disposition in *United States v. Thomas*, 302 F. App'x 558 (9th Cir. 2008), and the unpublished district court opinion in *United States v. Smith*, No. CR-09-0441-TUC-CKD-DTF, 2010 WL 1949364, at *6-7 (D. Ariz. Apr. 19, 2010).

### B.      Adequacy of Search Warrants

Wolff also contends that the Alameda County Superior Court erred in finding probable cause and issuing search warrants to search his electronics based on the affidavits submitted by the police. "A court evaluating the constitutionality of a search conducted pursuant to a search warrant issued by a magistrate reviews the magistrate's probable cause determination for clear error." *United States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012). The reviewing court's duty is to ensure the magistrate had a "substantial basis for . . . conclud[ing]" probable cause existed. *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980). "Probable cause exists when, considering the totality of the circumstances, the affidavit shows that there is a fair probability that contraband or evidence of a

5

United States District Court
Northern District of California

1   crime will be found in a particular place." *United States v. Fernandez*, 388 F.3d 1199, 1252 (9th

2   Cir. 2004) (internal quotation marks omitted).

3        Wolff contends that the statement in both affidavits that Ms. Wolff saw "'hundreds' of

4   images of minors engaged in sexual acts or exposing themselves in a sexual manner" does not

5   amount to probable cause that she saw child pornography, because Ms. Wolff's notion of sexual

6   acts or exposure might conceivably include conduct that does not qualify as child pornography.  It

7   is certainly true, as Wolff points out, that child pornography has a specific legal definition.  A

8   photograph or video qualifies as child pornography if its production involved the use of a minor

9   engaged in "sexually explicit conduct," which means actual or simulated sexual intercourse,

10  bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or

11  pubic area.  *See* 18 U.S.C. § 2256(2)(A)(i)-(v), (8)(A).[3]

12       But Wolff's argument goes too far.  An affidavit does not fail to pass muster just because it

13  does not exhaustively detail how the photos and videos fit into one of the statutory categories.  On

14  multiple occasions, the Ninth Circuit has found descriptions of the sort at issue here adequate to

15  uphold a magistrate's issuance of a warrant.

16       In *United States v. Smith*, 795 F.2d 841 (9th Cir. 1986), for example, the court upheld a

17  warrant based on an affidavit that was considerably more conclusory than the ones here.  In *Smith*,

18  the court primarily relied on an affidavit from an "experienced postal inspector" stating that he had

19  seen photos from the defendant depicting "three juvenile girls engaged in 'explicit sexual

20  conduct'" along with a citation to 18 U.S.C. § 2255 -- in other words, the language of the statute

21  itself, with no further factual description of what the photos depicted.  *See Smith*, 795 F.2d at 848-

22  49.  Although the court said that "more specific descriptions of the photographs would have been

23  desirable" and expressed some unease with the fact "that the government did not present and the

24  magistrate did not see the photos in question before the warrant issued," it upheld the warrant.  *Id.*

25

26  _____

27  [3] The affidavit referred to California Penal Code § 311.11(a) rather than the federal statute, but
    that does not affect the probable cause analysis, because there is no "meaningful difference"
    between the state definition of "sexual conduct" and the federal definition of "sexually explicit
28  conduct."  *Compare* Cal. Penal Code § 311.4(d) *with* 18 U.S.C. § 2256(2)(A); *see also United
    States v. Battershell*, 457 F.3d 1048, 1051 n.2 (9th Cir. 2006).

United States District Court
Northern District of California

The affidavit in *Smith* also included a statement by a pediatrician that the girls depicted were under eighteen, the defendant's admission that he took the pictures and "would just have to take more" if the photos were not returned to him, and statements by two of the girls that they had posed for the photos and that the defendant kept a "whip-like" device at his residence, but contained no further factual description of the photos sufficient to show that it fell into one of the statutory categories. *Id.* at 849. Wolff's suggestion that Court disregard the adequacy of the words "explicit sexual conduct" in *Smith* to find the words "sexual acts" deficient in this case draws too nice a distinction.

Even more squarely on point is *United States v. Patrick*, 365 F. App'x 834 (9th Cir. 2010) (unpublished). The Ninth Circuit upheld the sufficiency of an affidavit recounting that a lay computer technician had informed the affiant that he had seen "pornographic pictures of children involved in sexual acts" on the defendant's computer. *Patrick*, 365 F. App'x at 836. The court emphasized that the technician was not anonymous and that there were no inconsistencies in the technician's report or evidence of any motive to lie, all of which is true in this case as well. *See id.* Indeed, the facts here are even more supportive of probable cause, since the source of the information was Wolff's wife, not a stranger. *See also United States v. Battershell*, 457 F.3d 1048, 1052 (9th Cir. 2006) (noting fact that a witness was "turning in her boyfriend . . . enhances the credibility of her statement.").

Wolff says that *Patrick* is a non-published disposition that is not binding on this Court. That is true, but the fact that the Court is not obligated to follow it does not preclude the Court from finding it to be persuasive, which it does. At the very least, *Patrick* precludes suppression based on the good-faith exception to the exclusionary rule. "Good faith reliance exists if the agents' affidavit establishes 'at least a colorable argument for probable cause,' and the agents relied on the search warrant in an objectively reasonable manner." *United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008). Even if the Court were inclined to find that the affidavit, as written, did not amount to probable cause -- and it is not so inclined -- the fact that *Patrick* upheld the

United States District Court
Northern District of California

1    sufficiency of an affidavit with virtually identical language[4] is at least evidence that any issues

2    associated with the affidavits are "sufficient to create disagreement among thoughtful and

3    competent judges as to the existence of probable cause," warranting application of the good-faith

4    exception.  *See United States v. Leon*, 468 U.S. 897, 926 (1984).

5         Tellingly, Mr. Wolff cites no case where an affidavit like the one at issue here was found

6    inadequate.  The in-circuit cases he cites where an affidavit's description of photographs was

7    found inadequate to support probable cause involved situations where the plain language of the

8    affidavit unambiguously included subject matter that was not covered by the statute, rather than an

9    allegedly imprecise term that someone, somewhere might conceivably understand to include

10   lawful photographs.  *See Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) (description of a

11   photograph as "a young female (8-10 YOA) naked in a bathtub" did not indicate whether there

12   was "lascivious exhibition of the genitals or pubic area" as required by the statute); *United States

13   v. Busby*, No. CR 11-00188 SBA, 2011 WL 6303367, at *8 (N.D. Cal. Dec. 16, 2011)

14   (suppressing evidence where affidavit described models as "female, mid to late teens" because that

15   description "necessarily includes individuals who are 18 and 19 years-old").  A description does

16   not fail to provide probable cause just because a defendant can hypothesize an innocent reading of

17   it.  To hold otherwise would effectively impose a rote requirement on affiants and witnesses to

18   parrot the language of the statute.  It is difficult to imagine a rule more out of step with the

19   Supreme Court's repeated descriptions of probable cause as "a fluid concept" that admits of a

20   "practical, nontechnical conception" rather than "[r]igid legal rules."  *Illinois v. Gates*, 462 U.S.

21   213, 230-32 (1983); *see also Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003).

22        Wolff also stresses the fact that the affidavit in this case was based on the words and

23   descriptions of layperson, his wife.  Courts have certainly held that the fact that an affiant has

24   some experience with child pornography can give added heft to an identification.  *See, e.g., United

25   States v. Krupa*, 658 F.3d 1174, 1178 (9th Cir. 2011).  And non-expert declarations,

26

27   ─────────────────────
     [4] Wolff attempts to distinguish *Patrick* by pointing out that the affidavit here referred to minors
28   "engaged in sexual acts *or exposing themselves in a sexual manner*," but it is unclear how
     describing additional acts beyond those found adequate in *Patrick* could vitiate probable cause.

1    unaccompanied by copies of the illegal photographs, have been found to be adequate in many

2    cases.  *See United States v. Hill*, 459 F.3d 966, 968-69 (9th Cir. 2006) (relying on an affidavit

3    from a computer technician); *Patrick*, 365 F. App'x at 836-37 (same).  Presuming that an affidavit

4    based on a lay description is inadequate, as defendant seems to urge, is impossible to square with

5    *Battershell*'s holding that "[a]ny rational adult person can recognize sexually explicit conduct

6    engaged in by children under the age of 16 when he sees it" and that "we have accepted, for

7    purposes of an affidavit in support of a search warrant, the conclusory age estimates made by

8    civilians and other untrained lay witnesses without demanding a detailed explanation of how the

9    witnesses reached that conclusion." *Battershell*, 457 F.3d at 1053, 1054 (quoting *United States v.*

10   *Hurt*, 808 F.2d 707, 708 (9th Cir. 1987)).  It would also cripple investigatory efforts in cases like

11   this one, where the images were discovered by a private individual on a hard drive.  Law

12   enforcement would be forced to try to repeat exactly the private search, a course of action fraught

13   with its own potential constitutional pitfalls, as evidenced by the fact that there is presently a

14   circuit split about how far reconstructed searches of hard drives and computers can go.  *Compare*

15   *United States v. Lichtenberger*, 786 F.3d 478, 488-89 (6th Cir. 2015) (holding that police officer

16   exceeded scope of private search where there was no "virtual certainty" that the files he viewed

17   were the same ones the private individual previously viewed on the same computer) *with Rann v.*

18   *Atchison*, 689 F.3d 832, 837-38 (7th Cir. 2012) (permitting police to view images on digital media

19   device where private individual had previously viewed other images on same device) *and United*

20   *States v. Runyan*, 275 F.3d 449, 464-65 (5th Cir. 2001) (holding that the police do not exceed

21   private search where they examine more files on a drive than the private searcher did).

22           Consequently, the Court will not disturb the state court judge's issuance of the two

23   warrants in this case.  Additionally, the Court finds that excluding the fruits of the searches

24   conducted pursuant to the warrants would not be appropriate, since the good faith exception would

25   //

26   //

27   //

28   //

United States District Court
Northern District of California

9

1   apply even if the affidavits did not make out a showing of probable cause.

2                                  **CONCLUSION**

3        The motion to suppress is denied.

4        **IT IS SO ORDERED.**

5   Dated: October 14, 2015

6

7                                                    _____

8                                                    JAMES DONATO
                                                     United States District Judge

9

10

11

12

United States District Court
Northern District of California

28